50 F.3d 144
 63 USLW 2603, 19 Employee Benefits Cas. 1320,
Pens. Plan Guide P 23907T
 FRANKLIN H. WILLIAMS INSURANCE TRUST, By Its Trustees,
Shirley B. Williams and Harry Delaney, on behalf of
themselves and all other Beneficiaries of Travelers
Insurance Company Group Term Life Insurance Policies
Similarly Situated, Plaintiff-Appellant,
v.
The TRAVELERS INSURANCE COMPANY, Defendant-Appellee.
 No. 346, Docket 94-7361.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 5, 1994.
Decided March 17, 1995.
 
 Lester J. Tanner, New York City (Sharman T. Propp, Mitchell Lapidus, Tanner, Propp & Farber, of counsel), for plaintiff-appellant.
 Richard R. Lutz, New York City (Joan B. Gross, Jason P. Isralowitz, Stephenie J. Lannigan, Townley & Updike, of counsel), for defendant-appellee.
 G. Oliver Koppell, Atty. Gen. of the State of N.Y., New York City (Jane Lauer Barker, M. Patricia Smith, Asst. Attys. Gen. for the State of NY, of counsel), for amicus curiae State.
 Before FEINBERG, MESKILL, and MAHONEY, Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 Plaintiff-appellant Franklin H. Williams Insurance Trust (the "Trust") appeals from a judgment entered March 31, 1994 in the United States District Court for the Southern District of New York, Louis L. Stanton, Judge, that denied the Trust's motion to remand to state court this removed action seeking interest on insurance proceeds, and dismissed the action without prejudice for failure to exhaust administrative remedies. Franklin H. Williams Ins. Trust v. Travelers Ins. Co., 847 F.Supp. 23 (S.D.N.Y.1994).
 
 
 2
 We reverse and remand with the direction that the district court remand this action to the Supreme Court of the State of New York, New York County.
 
 Background
 
 3
 The Trust is the owner of a $50,000 group term life insurance policy made available to employees of Chemical Bank, of which Franklin H. Williams was a director, and issued by defendant-appellee The Travelers Life Insurance Company ("Travelers"). Williams died on May 20, 1990, and sometime in mid-November or mid-December 1990, the Trust filed a claim with Travelers. (The parties allege different dates; this dispute, however, is not material to the outcome of this appeal.) In response, on December 26, 1990, Travelers paid the Trust $50,000 in principal and $47.95 in interest, computed from the date on which (according to Travelers) the claim was filed.
 
 
 4
 On May 5, 1993, the Trust instituted this action in the Supreme Court of the State of New York, New York County on behalf of itself and "all other similarly situated beneficiaries of group life term insurance policies issued by [Travelers]." The complaint alleged a number of individual and class claims under state law, all premised upon Travelers' failure to comply with Sec. 3214(c) of the New York Insurance Law, which requires that interest on the proceeds of a life insurance policy be computed from the date of death.[1] The Trust sought compensatory and punitive damages for itself and all class members. The class has not been certified.
 
 
 5
 Travelers removed the action to the United States District Court for the Southern District of New York on the ground that the suit was an action to recover benefits under an employee benefit plan as defined in the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. Sec. 1001 et seq., and therefore arises under that federal statute. See 28 U.S.C. Sec. 1441(a)-(b).[2] Travelers then moved to dismiss the action for failure to exhaust administrative remedies, as required by the insurance plan, and because it was preempted under ERISA. The Trust moved to remand the action to the state court.
 
 
 6
 The district court ruled that: (1) because the insurance plan was an ERISA plan, removal was proper; (2) Sec. 3214(c) is saved from preemption by the ERISA "saving clause," 29 U.S.C. Sec. 1144(b)(2)(A); (3) nonetheless, the civil enforcement provision of ERISA, 29 U.S.C. Sec. 1132(a),[3] preempts private rights of action under Sec. 3214(c); and (4) the Trust failed to exhaust administrative remedies, requiring dismissal without prejudice. Williams, 847 F.Supp. at 25-28.
 
 
 7
 This appeal followed.
 
 Discussion
 
 8
 We address first the district court's analysis of the interplay between ERISA, preemption, and removal. Essentially, we conclude, in disagreement with the district court, that if Sec. 3214(c) is saved from preemption by the ERISA "saving clause," Sec. 1144(b)(2)(A), which exempts from preemption "any law of any state which regulates insurance," removal is improper. We then address whether Sec. 1144(b)(2)(A) does in fact save Sec. 3214(c) from preemption, and conclude, in agreement with the district court, that it does. We accordingly rule that: (1) removal was improper; (2) Sec. 1132(a) does not preempt state law enforcement of Sec. 3214(c); and (3) the case must be remanded to the state court from which it was removed.
 
 
 9
 A. ERISA, Preemption, and Removal.
 
 
 10
 An action brought in state court over which the federal courts have original subject matter jurisdiction, such as a case arising under federal law, see 28 U.S.C. Sec. 1331,[4] may be removed by a defendant to federal court. 28 U.S.C. Sec. 1441(a)-(b), supra note 2. A claim ordinarily arises under federal law only when stated in a well-pleaded complaint that raises issues of federal law. Metropolitan Life Ins. Co. v. Taylor ("Taylor"), 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Because federal preemption is a defense to the plaintiff's suit and does not appear on the face of the complaint, a defendant generally may not remove an action on the basis of federal preemption. Id.
 
 
 11
 However, the Supreme Court has recognized a limited exception to this rule. When Congress has so completely preempted an area of law that any civil complaint is necessarily federal in character, a complaint facially grounded in state law will nonetheless be deemed to arise under federal law and is removable. Id. at 63-64, 107 S.Ct. at 1546-47. The Court noted that claims preempted by Sec. 301 of the Labor Management Relations Act of 1947, 29 U.S.C. Sec. 185, are accorded this treatment. Id. at 64, 107 S.Ct. at 1547 (citing Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968)). As we will describe in more detail later in this opinion, the Court in Taylor, following the Avco precedent, see 481 U.S. at 65, 107 S.Ct. at 1547, ruled that claims which come "within the scope of Sec. [1132](a)," see supra note 3, are removable. 481 U.S. at 66, 107 S.Ct. at 1547-48.
 
 
 12
 In this case, the district court held that the claim asserted by the Trust "relate[s] to" an employee benefit plan within the meaning of ERISA's preemption provision, 29 U.S.C. Sec. 1144(a), because the insurance plan was made available and paid for by Chemical Bank pursuant to its benefit plan. Williams, 847 F.Supp. at 25. Nevertheless, the court found that N.Y.Ins.Law Sec. 3214(c) is not preempted by ERISA because of the operation of ERISA's saving clause, 29 U.S.C. Sec. 1144(b)(2)(A). 847 F.Supp. at 25-26. In spite of this conclusion, the court upheld the removal of this action. Id. at 25.
 
 
 13
 Section Sec. 1144(a)-(b) provides in pertinent part:
 
 
 14
 (a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....
 
 
 15
 ....
 
 
 16
 (b) ... (2)(A) ... [N]othing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities [the "saving clause"].
 
 
 17
 Id. (emphasis added). A claim under state law relates to an employee benefit plan if that law " 'has a connection with or reference to such a plan.' " Metropolitan Life Ins. Co. v. Massachusetts ("Metropolitan Life"), 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). If such a relationship is established, ERISA preemption follows unless the saving clause precludes preemption.
 
 
 18
 In Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and its companion case, Taylor, the Court addressed the interplay of preemption and removal jurisdiction. In Pilot Life, a diversity case that did not present the removal issue, the Court considered whether the plaintiff's common law tort and contract causes of action alleging improper processing of insurance claims were preempted by ERISA. Interpreting the phrase "relate to" in ERISA's preemption clause, Sec. 1144(a), in accordance with its broad, common sense meaning, the Court held that: "There is no dispute that the common law causes of action asserted in Dedeaux's complaint 'relate to' an employee benefit plan and therefore fall under ERISA's express pre-emption clause, Sec. [1144](a)." 481 U.S. at 47, 107 S.Ct. at 1553; see also Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140, 111 S.Ct. 478, 483-84, 112 L.Ed.2d 474 (1990) (state law claim that employer wrongfully terminated employee to avoid contributing to ERISA plan on employee's behalf "relate[s] to" ERISA plan within the meaning of Sec. 1144(a) and is preempted).
 
 
 19
 Pilot Life emphasized Congress' intent that " 'a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans[.]' " Pilot Life, 481 U.S. at 56, 107 S.Ct. at 1557 (quoting 120 Cong.Rec. 29,942 (1974) (remarks of Sen. Javits)); cf. Howard v. Gleason Corp., 901 F.2d 1154, 1157 (2d Cir.1990) (ERISA preempts laws that affect " 'the primary administrative functions of benefit plans' ") (quoting Aetna Life Ins. Co. v. Borges, 869 F.2d 142, 146 (2d Cir.), cert. denied, 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989)). The Court accordingly ruled in Pilot Life that: "Unless these common law causes of action fall under an exception to Sec. [1144](a), ... they are expressly pre-empted." Id. at 48, 107 S.Ct. at 1553. The Court concluded that the exception provided by the saving clause, Sec. 1144(b)(2)(A), for a state law "which regulates insurance" was inapplicable, because the state law at issue in Pilot Life was not "specifically directed toward [the insurance] industry." 481 U.S. at 50, 107 S.Ct. at 1554.
 
 
 20
 Taylor, which involved the same type of claims as Pilot Life, reiterated the Pilot Life test for preemption: a cause of action is preempted by ERISA if it both " 'relate[s] to' " an employee benefit plan and is not saved by Sec. 1144(b)(2)(A). 481 U.S. at 62 [107 S.Ct. at 1545-46] (quoting Sec. 1144(a)). Taylor also considered whether the preempted claims were removable. The Court framed that issue as follows:
 
 
 21
 In Franchise Tax Board [v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) ], the Court held that ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law. [Id.] at 25-27 [103 S.Ct. at 2854-2855]. The court suggested, however, that a state action that was not only preempted by ERISA, but also came "within the scope of Sec. 502(a) of ERISA" might fall within the Avco rule. Id., at 24-25 [103 S.Ct. at 2854]. The claim in this case, unlike the state tax collection suit in Franchise Tax Board, is within the scope of Sec. [1132](a) and we therefore must face the question specifically reserved by Franchise Tax Board.
 
 
 22
 481 U.S. at 64, 107 S.Ct. at 1546-47. The Court answered this question in the affirmative, ruling that because "Taylor's cause of action [wa]s within the scope of Sec. [1132](a)," the lawsuit, "though it purport[ed] to raise only state law claims, [wa]s necessarily federal in character ... and [wa]s removable to federal court...." 481 U.S. at 66-67, 107 S.Ct. at 1548.
 
 
 23
 Following Taylor, we have posed the test for removal under ERISA as follows: "A claim styled as a state common law cause of action is removable under ERISA if it 'relates to' an employee benefit plan within the meaning of section 514(a), 29 U.S.C. Sec. 1144(a), and falls within the scope of the statute's civil enforcement provisions, found in section 502(a), 29 U.S.C. Sec. 1132(a)." Smith v. Dunham Bush, 959 F.2d 6, 8 (2d Cir.1992) (citing Taylor, 481 U.S. at 64, 107 S.Ct. at 1546-47 (1987)).
 
 
 24
 Smith did not address the saving clause, which was not at issue in that case. In choosing to frame the test's preemption prong as whether the cause of action "relates to" an ERISA plan, however, we did not intend that a court would hold (as the district court did in this case) that a claim which relates to ERISA, but is nevertheless precluded from preemption by the saving clause, could be removed.
 
 
 25
 Taylor noted the Court's ruling in Franchise Tax Board that "ERISA preemption, without more, does not convert a state claim into an action arising under federal law" for removal purposes. Taylor, 481 U.S. at 64, 107 S.Ct. at 1547 (citing Franchise Tax Board, 463 U.S. at 25-27, 103 S.Ct. at 2854-56). Taylor specified that the "more" was provided when the state claim falls "within the scope of Sec. [1132](a)." 481 U.S. at 66, 107 S.Ct. at 1547-48. But there must first be preemption, which is a necessary precondition to removal. Thus, when preemption is precluded by the saving clause, removal is also barred.
 
 
 26
 We proceed to address the question whether the saving clause rescues Sec. 3214(c) from preemption.
 
 
 27
 B. The Saving Clause.
 
 
 28
 There is no question that Sec. 3214(c), which is expressly directed to the payment of interest to beneficiaries of life insurance policies, see supra note 1, " 'relate[s] to' [employee benefit] plans governed by ERISA so as to fall within the reach of ERISA's preemption provision, Sec. [1144](a)." Metropolitan Life, 471 U.S. at 739, 105 S.Ct. at 2389 (alterations partially added). Thus, Sec. 3214(c) is preempted by ERISA unless the saving clause applies. Metropolitan Life and Pilot Life help to ascertain the parameters set by the saving clause.
 
 
 29
 Addressing the mandatory mental-health-care provision that was at issue in Metropolitan Life, the Court applied "common sense" in noting that: "To state the obvious, Sec. 47B regulates the terms of certain insurance contracts, and so seems to be saved from pre-emption by the saving clause as a law 'which regulates insurance.' " 471 U.S. at 740, 105 S.Ct. at 2389. The Court then looked to case law interpreting the phrase "business of insurance" under the McCarran-Ferguson Act, 15 U.S.C. Sec. 1012, which subjects the insurance industry to the federal antitrust laws, but otherwise reserves state power over insurance.[5] That case law revealed a three-prong test used to determine whether a particular practice involves the business of insurance. A court is to consider:
 
 
 30
 "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry."Metropolitan Life, 471 U.S. at 743, 105 S.Ct. at 2391 (quoting Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129, 102 S.Ct. 3002, 3008-09, 73 L.Ed.2d 647 (1982)).
 
 
 31
 The Court found that the mandatory mental-health-care benefits provision easily met each prong, further buttressing its common sense conclusion. Id. Because the Court thus found that the law was not preempted by ERISA, it upheld an injunction issued by the Massachusetts state courts at the request of the Massachusetts Attorney General requiring that insurance carriers comply with the law. Id. at 735, 758, 102 S.Ct. at 2386-87, 2399.
 
 
 32
 In Pilot Life, on the other hand, applying the common sense view as well as the McCarran-Ferguson test, the Court held that common law actions for improper processing of claims are not within the saving clause. Noting that such claims are based upon general contract and tort principles, rather than insurance law, the Court reasoned: "A common-sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." 481 U.S. at 50, 107 S.Ct. at 1554. The Court also found that such a claim does not serve to spread risk or strongly impact the policy relationship between the insurer and the insured. Id. at 50-51, 107 S.Ct. at 1554-55.
 
 
 33
 Section 3214(c) passes the common sense test; directed specifically at the insurance industry, it governs payments associated with death benefits. It is not clear, however, that Sec. 3214(c) satisfies all three of the McCarran-Ferguson standards. The date that interest accrues impacts to some degree upon a transfer of risk from the insured to the insurer, see United States Dep't of Treasury v. Fabe, --- U.S. ----, ----, 113 S.Ct. 2202, 2209, 124 L.Ed.2d 449 (1993), by varying the amount paid to the insured upon the occurrence of the insured event or condition. The date chosen for the accrual of interest affects the policy relationship between the insurer and the insured, but it is arguable whether this choice is an "integral part" of that relationship. On the other hand, both Sec. 3214(c) and the practice that it regulates are "limited to entities within the insurance industry."
 
 
 34
 Some courts have adopted the view that both the common sense test and the McCarran-Ferguson test must invariably be satisfied. See, e.g., Tingle v. Pacific Mut. Ins. Co., 996 F.2d 105, 110 & n. 25 (5th Cir.1993) (collecting cases); DeBruyne v. Equitable Life Assurance Soc'y of the United States, 920 F.2d 457, 468-70 (7th Cir.1990). Whatever the merit of this view, we regard it as inapplicable here. At a minimum, there is no clear failure to satisfy any McCarran-Ferguson standard in this case. Further, Sec. 3214(c) explicitly addresses the relationship between an insurance company and its policyholders, which is "the focus of McCarran-Ferguson." Fabe, --- U.S. at ----, 113 S.Ct. at 2208. In our view, in any event, Metropolitan Life placed its primary emphasis upon a "common sense" assessment of the state statute at issue in that case, and simply supplemented that assessment with a discussion of the statute's conformance with the McCarran-Ferguson standards. See 471 U.S. at 740-44, 105 S.Ct. at 2389-91. Further, Fabe, although not an ERISA case, makes clear that the Court continues to grant considerable deference to state regulation of insurance. See Fabe, --- U.S. at ---- - ----, 113 S.Ct. at 2207-12 (McCarran-Ferguson Act requires subordination of federal statute regarding priority of federal claims to Ohio statute that ranks federal claims behind policyholders' claims in insolvency of insurance company).
 
 
 35
 We are mindful of cases cited by Travelers which hold that various state statutes are not saved from preemption by Sec. 1144(b)(2)(A). These cases, however, involve statutes that, while impacting upon the insurance industry, are based upon general contract and tort principles. See, e.g., DeBruyne, 920 F.2d at 469 (statute prohibiting false representations concerning terms and benefits of policies based upon common law fraud principles); Ramirez v. Inter-Continental Hotels, 890 F.2d 760, 763 (5th Cir.1989) (statute allowing private right of action for unfair competition and deceptive practices "incorporates wholesale" law of general application prohibiting deceptive trade practices); cf. In re Life Ins. Co. of N. Am., 857 F.2d 1190, 1194-95 (8th Cir.1988) (statute prohibiting vexatious refusal to pay claim improperly augments ERISA remedies); Anschultz v. Connecticut General Life Ins. Co., 850 F.2d 1467, 1469 (11th Cir.1988) (statute providing remedies for breach of policy improperly augments ERISA remedies).
 
 
 36
 Unlike statutes that provide general remedies for unfair practice, fraud, and breach of contract, Sec. 3214(c) concerns the amount of the payment to which an insured is entitled. We believe that this provision is far more similar to the statute addressed in Metropolitan Life, and is precisely the type of statute that Congress intended to save from ERISA preemption. See Metropolitan Life, 471 U.S. at 744, 105 S.Ct. at 2391 (finding no "contrary case authority suggesting that laws regulating the terms of insurance contracts should not be understood as laws that regulate insurance"); cf. American Progressive Life and Health Ins. Co. v. Corcoran, 715 F.2d 784, 786 (2d Cir.1983) (state regulation setting maximum commission that life insurance salesmen may earn saved from preemption).
 
 
 37
 We conclude that Sec. 3214(c) is saved from preemption under ERISA. Accordingly, removal was improper. It also follows that the district court erred in holding that ERISA's civil enforcement provision, Sec. 1132(a)(1)(B), preempts enforcement of the New York law, see Williams, 847 F.Supp. at 26-27, because such a result would be plausible only if the state law itself were also preempted. It would be quixotic to rule that a claim under a state statute that is saved from ERISA preemption, with the result that the claim may not be removed to federal court, may nonetheless be enforced only via ERISA provisions and remedies. We note in this connection that in Metropolitan Life, after finding the challenged Massachusetts statute to be saved from preemption by Sec. 1144(b)(2)(A), the Court affirmed a state court injunction mandating compliance with the state law. See 471 U.S. at 735, 758, 105 S.Ct. at 2386, 2399. But see Kanne v. Connecticut Gen. Life Ins. Co., 867 F.2d 489, 493-94 (9th Cir.1988) (per curiam) (ruling that Sec. 1132(a) barred a claim under a California statute deemed to fall within the saving clause), cert. denied, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989).
 
 Conclusion
 
 38
 We reverse the judgment of the district court, and remand with the direction that the district court remand this action to the Supreme Court of the State of New York, New York County.
 
 
 
 [1]
 Section 3214(c) provides in pertinent part:
 If no action has been commenced, interest upon the principal sum paid to the beneficiary ... shall be computed daily at the rate of interest currently paid by the insurer on proceeds left under the interest settlement option, from the date of the death of an insured ... in connection with a death claim on such a policy of life insurance ... to the date of payment and shall be added to and be a part of the total sum paid.
 Id. (emphasis added).
 
 
 [2]
 Section 1441(a)-(b) provides in pertinent part:
 (a) Except as otherwise provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending....
 (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties....
 
 
 [3]
 Section 1132(a) provides in pertinent part: "A civil action may be brought--(1) by a participant or beneficiary-- ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]"
 
 
 [4]
 Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."
 
 
 [5]
 Section 1012 provides:
 (a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
 (b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: Provided, That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.