Edgar ROMNEY, Manager–Secretary, Blouse, Skirt, Sportswear, Children's Wear & Allied Workers Union, Local 23–25, ILGWU, Plaintiff–Appellant,

v.

Alan LIN, Defendant–Appellee.

No. 1602, Docket 95–9275.

United States Court of Appeals, Second Circuit.

Argued June 7, 1996.

Decided Aug. 27, 1996.

Ira Jay Katz, New York City (Max Zimny, Eric B. Chaikin, Alan M. Elis, Chaikin & Chaikin, of counsel), for Plaintiff–Appellant.

Christopher J. Sullivan, New York City (Geri S. Krauss, Carol M. Goodman, Herrick, Feinstein LLP, of counsel), for Defendant–Appellee.

J. Davitt McAteer, Marc I. Machiz, Karen L. Handorf, Maria Makris–Gouvas, U.S. Department of Labor, Washington, DC, filed a brief for Amicus Curiae Secretary of Labor.

Before: NEWMAN, Chief Judge, JACOBS, Circuit Judge, and CHATIGNY, District Judge[1].

JACOBS, Circuit Judge:

Plaintiff Edgar Romney is a union official who holds an uncollected state court judgment against an employer that failed to make contributions to employee benefit funds. Romney brought a collection suit in state court under a state law, N.Y.Bus.Corp. Law § 630 (McKinney 1986) ("§ 630"), which provides that, for certain corporations, such obligations may be enforced against the company's ten largest shareholders. The shareholder defendant, Alan Lin, removed the collection action to the United States District Court for the Southern District of New York, pleading federal question jurisdiction on the ground that the state-law cause of action is preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461. Chief Judge Griesa dismissed the complaint. On appeal, Romney claims that the district court lacked subject matter jurisdiction.

For the reasons set forth below, we affirm the judgment of the district court.

---

**1.** The Honorable Robert N. Chatigny, of the United States District Court for the District of Connecticut, sitting by designation.

## BACKGROUND

■ When we review a district court's dismissal of a complaint pursuant to Fed. R.Civ.P. 12(b)(6), we take as true the facts that are alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 20 (2d Cir.1996). The allegations of the complaint are as follows.

On July 1, 1990, Goodee Fashions (a New York corporation) entered into a collective bargaining agreement with the Blouse, Skirt, Sportswear, Children's Wear & Allied Workers Union, Local 23-25, ILGWU (the "Union"). Among other undertakings, Goodee Fashions was required to make contributions to four employee benefit funds. Three of these multi-employer funds are ERISA funds; the fourth was the subject of a settlement and is not at issue in this appeal.[2] Goodee Fashions failed to make contributions to the ERISA funds during the first half of 1992. Pursuant to the collective bargaining agreement, the Union sought arbitration of the contributions dispute. On October 9, 1992, the Union won a default arbitration award. On April 22, 1993, the award was confirmed by the New York State Supreme Court, New York County, and a judgment was entered in the amount of $70,647.17. Execution against Goodee Fashions was returned unsatisfied.

Romney, the Union's Manager–Secretary, commenced this action in New York State Supreme Court, New York County, on March 3, 1994. Romney claimed that defendant Lin, as one of the ten largest shareholders of Goodee Fashions, was liable under New York law for the company's unpaid contributions to the ERISA funds. *See* N.Y.Bus.Corp.Law § 630. Lin removed the action to federal district court on April 18, 1994, alleging jurisdiction on three independent grounds: (1)

diversity of citizenship, (2) preemption under the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141–197, and (3) preemption under ERISA.[3] On June 13, 1994, Lin moved for dismissal of the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Romney cross-moved for an order remanding his case to state court.

In an opinion dated August 23, 1995, the district court denied Romney's cross-motion for remand, and granted Lin's motion to dismiss the complaint, on the ground that Romney's claim was preempted by ERISA. *Romney v. Lin*, 894 F.Supp. 163, 165–66 (S.D.N.Y.1995). Specifically, the district court reasoned that "ERISA contains a detailed provision regarding civil enforcement," and that the ERISA enforcement scheme "does not authorize any type of action against officers and stockholders of a corporate employer to recover contributions owed to an ERISA fund." *Id.* at 166. In so deciding, the district court acknowledged that its disposition conflicted with a ruling by the Court of Appeals of New York that § 630 is not preempted by ERISA, *Sasso v. Vachris*, 66 N.Y.2d 28, 34, 494 N.Y.S.2d 856, 860, 484 N.E.2d 1359, 1363 (1985). *Lin*, 894 F.Supp. at 165–66; *accord Romney v. Cai*, Nos. 94 CV 2546, 2547, 2548, 1996 WL 331184, at *2–*3 (E.D.N.Y. June 4, 1996).

We affirm on the ground adopted by the district court.

## DISCUSSION

■ On appeal, Romney argues that the district court erroneously assumed that it had removal jurisdiction based on ERISA preemption. We review de novo whether the district court had subject matter jurisdiction. *Scelsa v. City Univ.*, 76 F.3d 37, 40 (2d Cir.1996).

---

**2.** The three ERISA funds are the ILGWU National Retirement Fund, the ILGWU Health Services Plan, and the ILGWU Health & Welfare Fund.

**3.** Since we conclude that ERISA preemption confers subject matter jurisdiction, we do not address the other possible bases of jurisdiction raised in Lin's petition for removal.

The petition asserts that there may be diversity jurisdiction, but the district court dismissed the

complaint before any answer was filed, and it is unclear on this record whether that jurisdictional basis is viable.

Lin also argued in his petition that LMRA § 301, 29 U.S.C. § 185(a), preempted Romney's claim. The district court correctly ruled that § 630 is not preempted by LMRA § 301. *See Albradco, Inc. v. Bevona*, 982 F.2d 82, 87 (2d Cir.1992).

A defendant in a state court civil action may remove a case over which the district court has original jurisdiction, 28 U.S.C. § 1441(a), including of course a civil action that "aris[es] under the ... laws ... of the United States." 28 U.S.C. §§ 1331, 1441(b). Although "[i]t is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law," *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987), a state-law cause of action arises under federal law within the meaning of 28 U.S.C. § 1331, and is removable under 28 U.S.C. § 1441, if (1) the cause of action is based on a state law that is preempted by ERISA, and (2) the cause of action is "within the scope of the civil enforcement provisions" of ERISA § 502(a), 29 U.S.C. § 1132(a). *Id.* at 64–66, 107 S.Ct. at 1546–48; *see also Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 573 (2d Cir.1995); *Franklin H. Williams Ins. Trust v. Travelers Ins. Co.*, 50 F.3d 144, 149 (2d Cir.1995). That is because Congress specifically intended to exert "extraordinary preemptive power" when it adopted the detailed provisions of ERISA § 502(a). *Metropolitan Life Ins.*, 481 U.S. at 64, 107 S.Ct. at 1546–47.

In this case, preemption is therefore one requisite of removal jurisdiction, as well as the key to the merits. We address preemption first. Then, because preemption alone is insufficient to support removal jurisdiction, we address the other requisite: whether Romney's suit under § 630 is "within the scope of the civil enforcement provisions" of ERISA § 502(a). Third, we consider the contrary decision in *Sasso v. Vachris*. Finally, we turn to two other arguments advanced by Romney on this appeal.

### A. *Preemption.*

The preemption language of ERISA, contained in § 514(a), is purposefully sweeping:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a) (emphasis added); *see New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, —— U.S. ——, ——, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995) (hereinafter, *"Blue Cross"*) (ERISA § 514(a) "is clearly expansive"). The exemptions spelled out in subsection (b)—such as state laws that regulate insurance, banking, or securities, and state criminal statutes—are inapplicable, as the parties agree. The question is therefore whether § 630 "relates to" ERISA plans. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 2900–01, 77 L.Ed.2d 490 (1983). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has *a connection with* or *reference to* such a plan." *Id.* at 96–97, 103 S.Ct. at 2900 (emphasis added). We have said that a state law "relates to" ERISA plans if it either (1) "makes explicit reference to ERISA plans," or (2) would disserve the basic purpose of preemption in ERISA § 514, "namely 'to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans.'" *Greenblatt*, 68 F.3d at 574 (citation omitted). We conclude that § 630 is preempted on either ground.

#### 1. *Explicit Reference*

A reference to ERISA plans may be explicit without actually using the term "ERISA plans." *Travelers Ins. Co. v. Pataki*, 63 F.3d 89, 94 (2d Cir.1995); *see, e.g., District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 130, 113 S.Ct. 580, 583–84, 121 L.Ed.2d 513 (1992) (statute that specified "the existing health coverage of the employee" referred to ERISA plans and was preempted); *FMC Corp. v. Holliday*, 498 U.S. 52, 59, 111 S.Ct. 403, 408, 112 L.Ed.2d 356 (1990) (same where statute specified "[a]ny program, group contract or other arrangement for payment of benefits"); *cf. Ingersoll–Rand v. McClendon*, 498 U.S. 133, 140, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990) (state common-law cause of action was preempted where plaintiff must plead "employer's desire to avoid contributing to, or

paying benefits under, the employee's pension fund").

■ Even so, a state statute is not preempted by ERISA if it "affect[s] employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' a plan." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21; *see also Greater Wash. Bd. of Trade,* 506 U.S. at 130 n. 1, 113 S.Ct. at 583 n. 1 (quoting *Shaw* ). "[T]he Supreme Court has never found a statute to be preempted simply because the word ERISA (or its equivalent) appears in the text." *NYS Health Maintenance Org. Conference v. Curiale,* 64 F.3d 794, 800 (2d Cir.1995) (discussing *Greater Wash. Bd. of Trade* ); *see Thiokol Corp. v. Roberts,* 76 F.3d 751, 758 (6th Cir.1996) ("When the Court strikes down a statute that 'refers to' ERISA or a covered plan, it does so not because of the reference per se ... [but] because that reference has a legal effect."), *petition for cert. filed,* 64 U.S.L.W. 3808 (U.S. May 23, 1996) (No. 95–1913). In order to trigger ERISA preemption, a statute must not merely mention or allude to an ERISA plan, but must also have some "relationship" to ERISA plans or "affect[ ] ERISA plans in some manner." *Curiale,* 64 F.3d at 799–800 & n. 15; *accord Thiokol,* 76 F.3d at 756–61 ("[S]tatutes that refer to ERISA, but have no effect on a covered plan, are not within the scope of the definition of relates to and, as such, are not pre-empted."); *United Wire, Metal and Machine Health & Welfare Fund v. Morristown Memorial Hosp.,* 995 F.2d 1179, 1192 n. 6 (3d Cir.) ("[F]or example, a state statute providing that 'no employer, including an ERISA plan, shall discriminate on grounds of race or gender' would not be preempted despite its reference to an ERISA plan."), *cert. denied,* 510 U.S. 944, 114 S.Ct. 382, 126 L.Ed.2d 332 (1993).

■ Does § 630 make "explicit reference" to ERISA plans? The relevant text of that statute provides:

> *The ten largest shareholders* ... of every corporation ... no shares of which are listed on a national securities exchange or regularly quoted in an over-the-counter market by one or more members of a national or an affiliated securities association, *shall jointly and severally be personally liable for* all debts, *wages or salaries due and owing* to any of its laborers, servants or employees....

N.Y.Bus.Corp.Law § 630(a) (emphasis added).[4] The statute defines "wages or salaries" as "all compensation and benefits payable by an employer to or for the account of the employee for personal services rendered by such employee. These shall specifically include ... employer contributions to or payments of insurance or welfare benefits [and] employer contributions to pension or annuity funds...." *Id.* § 630(b). Although this state statute does not say "ERISA plans" in so many words, the references to "insurance or welfare benefits" and "pension or annuity funds" that are supported by "employer contributions" describe (or include) with sufficient specificity welfare benefit plans that are regulated under ERISA, and therefore "make[ ] explicit reference to ERISA plans." *Greenblatt,* 68 F.3d at 574.

■ Moreover, § 630's reference to ERISA plans is no passing mention or allusion. *See Curiale,* 64 F.3d at 799–800 & n. 15. It is evident that the expanded remedy afforded by § 630 would "affect[ ] ERISA plans," *id.* at 800, by assisting the collection of funds available for plan purposes; indeed, one element of Romney's cause of action here is the existence of the three ERISA plans that have suffered from Goodee Fashions' delinquencies. It makes no difference that § 630 assists rather than burdens ERISA plans. Congress' purpose in providing for preemption in ERISA § 514(a), 29 U.S.C. § 1144(a), was to relieve employers from having to comply with "differing regulatory requirements in differing States," *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 9, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987), lest the burdens of such compliance "introduce considerable inefficiencies ..., which might lead those employers with existing plans to re-

---

4. In his complaint, Romney specifically alleged that Goodee Fashions had no shares that are listed on a national securities exchange or regu- larly quoted in an over-the-counter market by one or more members of a national or affiliated securities association.

duce benefits, and those without such plans to refrain from adopting them," *id.* at 11, 107 S.Ct. at 2217. Thus, while § 630 would be salutary for plans that suffer a loss by reason of an employer's failure to contribute, this benefit would be achieved at a cost because, for stockholders of companies subject to § 630, personal liability may be a factor that militates against creating ERISA plans in the first place.

As the district court emphasized, Congress provided for a comprehensive set of remedies in ERISA § 502(a), 29 U.S.C. § 1132(a). *Ingersoll–Rand,* 498 U.S. at 144, 111 S.Ct. at 485–86; *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 1556–57, 95 L.Ed.2d 39 (1987). Yet ERISA nowhere provides for personal shareholder liability. *See Cement & Concrete Workers District Council Welfare Fund v. Lollo,* 35 F.3d 29, 33 (2d Cir.1994) (shareholders generally not liable under ERISA); *Sasso v. Cervoni,* 985 F.2d 49, 50 (2d Cir.) (same), *cert. denied,* 508 U.S. 973, 113 S.Ct. 2964, 125 L.Ed.2d 664 (1993). By changing remedies, § 630 would alter the incentives for employers to create and maintain ERISA plans, and thereby would affect ERISA plans in ways that Congress did not intend.

In sum, § 630 "makes explicit reference to ERISA plans," *Greenblatt,* 68 F.3d at 574, and significantly "affects ERISA plans in some manner," *Curiale,* 64 F.3d at 800. Put another way, the effect of § 630 on ERISA plans is not so "tenuous, remote or peripheral," *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21, as to save § 630 from preemption. *See also Greater Wash. Bd. of Trade,* 506 U.S. at 130 n. 1, 113 S.Ct. at 583 n. 1. Therefore, we hold that § 630 "relates to" ERISA plans, and is preempted by ERISA.

### 2. Avoiding Multiplicity of Regulation

▇ Alternatively, even if § 630 were not preempted on the ground that it makes an explicit reference to ERISA plans, we believe that § 630 is preempted because it would disserve the basic purpose of preemption in ERISA § 514, "namely 'to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans.'" *Greenblatt,* 68 F.3d at 574

(quoting *Blue Cross,* —— U.S. at ——–——, 115 S.Ct. at 1677–78). Briefly, § 630 would hamper "'the nationally uniform administration of employee benefit plans'" by providing "'an alternative enforcement mechanism to [ERISA] § 502(a).'" *Greenblatt,* 68 F.3d at 574 (quoting *Blue Cross,* —— U.S. at ——–——, 115 S.Ct. at 1677–78). That conclusion follows from the analysis supporting our conclusion that Romney's cause of action under § 630 is "within the scope of the civil enforcement provisions" of ERISA § 502(a), to which we now turn.

### B. "Within the Scope of" ERISA § 502(a).

▇ Although we hold that § 630 is preempted by ERISA, that alone does not confer removal jurisdiction on the district court. *Metropolitan Life Ins.,* 481 U.S. at 63, 107 S.Ct. at 1546. We must also find that Romney's cause of action under § 630 is "within the scope of the civil enforcement provisions" of ERISA § 502(a), 29 U.S.C. § 1132(a). *Id.* at 66, 107 S.Ct. at 1547–48; *see also Greenblatt,* 68 F.3d at 573.

In determining whether a state-law cause of action is "within the scope of" ERISA § 502(a), we effectuate the underlying congressional policy for that provision. "Congress intended § 502(a) to be the exclusive remedy for rights guaranteed under ERISA...." *Ingersoll–Rand,* 498 U.S. at 144, 111 S.Ct. at 485. ERISA § 502(a) sets forth "a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987). This balancing "would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain *remedies under state law that Congress rejected in ERISA.*" *Id.* (emphasis added). Thus, in *Smith v. Dunham–Bush, Inc.,* 959 F.2d 6, 10–11 (2d Cir.1992), we held that Connecticut common-law claims for breach of contract and negligent misrepresentation to enforce an oral promise to pay pension-related benefits were within the scope of ERISA § 502(a), because ERISA

§ 502(a)(1)(B) already provided a plan participant or beneficiary a cause of action to enforce his rights to pension benefits. In response to the plaintiff's argument that our ruling would leave him no adequate remedy, we explained that "[t]he effect of ERISA preemption is wholly to *eliminate state law claims* by benefit plan participants and beneficiaries, leaving them *only* the causes of action specifically provided in the statute's civil enforcement provisions." *Id.* at 11 (emphasis added).

Romney brought his claim under § 630 in order to collect delinquent contributions to ERISA plans that Goodee Fashions was obligated to pay. However, ERISA § 502(a) already provides a means for collecting delinquent ERISA contributions from employers. Under ERISA § 502(a)(3)(B), a plan fiduciary may sue to obtain any "appropriate equitable relief (i) to redress [violations of the terms of a plan] or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B). ERISA § 515 provides:

> Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Thus, ERISA § 502(a) already provides a cause of action to enforce employer contributions to ERISA plans: a plan fiduciary may obtain relief for delinquencies pursuant to ERISA § 515.

ERISA, however, does not impose upon the shareholders of the employer corporation the *employer*'s statutory liability to make contributions. *Lollo,* 35 F.3d at 33; *Cervoni,* 985 F.2d at 50. Congress could have provided otherwise, but did not. Since Congress elected to impose no direct liability on shareholders for such contributions, permitting suits against shareholders under § 630 would reallocate the burdens and benefits of establishing and maintaining ERISA plans for a class of New York corporations, and afford those ERISA plans special and stringent means of civil enforcement. We hold that

Romney's cause of action falls within the scope of ERISA § 502(a), and that the district court had removal jurisdiction. *See Metropolitan Life Ins.,* 481 U.S. at 62–64, 107 S.Ct. at 1545–47.

#### C. *Sasso v. Vachris.*

As the district court recognized, New York's highest court reached the opposite conclusion on the preemption issue in *Sasso v. Vachris,* 66 N.Y.2d 28, 32–35, 494 N.Y.S.2d 856, 858–60, 484 N.E.2d 1359, 1361–63 (1985). The principal grounds of decision in *Vachris* were: (1) that a series of cases had limited ERISA's preemption to state enactments that bear upon the "terms and conditions" of employee benefit plans; and (2) that § 630 is a remedial statute that adds an enforcement mechanism without changing the plans' "terms and conditions."

In *Rebaldo v. Cuomo,* 749 F.2d 133, 137 (2d Cir.1984), *cert. denied,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985), we said that "a state law must 'purport[ ] to regulate, ... the terms and conditions of employee benefit plans' to fall within the preemption provision." (quoting 29 U.S.C. § 1144(c)(2)). We drew that deduction from ERISA § 514(c)(2), which defines the word "State" (for purposes of ERISA § 514(a), *id.* § 1144(a)) as any state or local authority "which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans." *Id.* § 1144(c)(2).

Relying on *Rebaldo, Vachris* held that § 630 was not preempted, principally because the New York statute did not purport to regulate the terms or conditions of employee benefit plans. 66 N.Y.2d at 32, 494 N.Y.S.2d at 858, 484 N.E.2d at 1361. However, in *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 141–42, 111 S.Ct. 478, 484–85, 112 L.Ed.2d 474 (1990), the Supreme Court specifically held that the ERISA definition of "State" does not control or narrow ERISA § 514(a)'s broad preemption of "all State laws insofar as they may now or hereafter relate to" ERISA plans:

> Had Congress intended to restrict ERISA's pre-emptive effect to state laws purporting to regulate plan terms and conditions, it surely would not have done so by

placing the restriction in an adjunct definition section while using the broad phrase "relate to" in the pre-emption section itself.

*Id.* at 141, 111 S.Ct. at 484. We have since acknowledged that, in light of *Ingersoll–Rand,* further reliance on *Rebaldo* is unwarranted. *See, e.g., Travelers Ins. Co. v. Cuomo,* 14 F.3d 708, 719 (2d Cir.1993) ("*Rebaldo*'s fundamental premise was rejected by the Supreme Court."), *rev'd on other grounds sub nom., Blue Cross,* —— U.S. at ——, 115 S.Ct. at 1676; *see also Smith v. Dunham–Bush, Inc.,* 959 F.2d 6, 9 n. 3 (2d Cir.1992). The same "fundamental premise" that "poisoned" *Rebaldo*'s analysis, *Travelers Ins. Co.,* 14 F.3d at 719, afflicts *Vachris* as well.

The *Vachris* court also considered whether Congress intended to preempt statutes such as § 630 when Congress adopted the 1980 amendments to ERISA, which, *inter alia,* added a provision requiring employers to contribute to multi-employer plans in accordance with the plans themselves or pursuant to collective bargaining agreements. *See* 29 U.S.C. § 1145. The *Vachris* court reviewed the legislative history, and found signs that Congress intended its 1980 ERISA amendments to supplement, rather than replace, state-law remedies. 66 N.Y.2d at 34–36, 494 N.Y.S.2d at 860–61, 484 N.E.2d at 1363–64. According to the *Vachris* court, the 1980 amendments "merely added a statutory obligation upon employers to make contributions ... as required by the terms of the employee benefit plan or the collective bargaining agreement[,] and provided a civil cause of action in favor of fiduciaries to enforce this obligation." *Id.,* 66 N.Y.2d at 35, 494 N.Y.S.2d at 860, 484 N.E.2d at 1363 (citations omitted).

The problem with this particular line of analysis in *Vachris* is that it too is foreclosed by *Ingersoll–Rand.* There, the Supreme Court considered a Texas common-law cause of action for wrongful discharge based specifically on an employer's desire to avoid contri-

butions to or payments from an employee's pension; the Court found that this cause of action was preempted by ERISA. 498 U.S. at 143–45, 111 S.Ct. at 485–86. Although the Texas cause of action was intended to afford heightened protection for ERISA beneficiaries, the Court characterized it as "conflict[ing] directly with an ERISA cause of action," because it "falls squarely within the ambit of ERISA § 510," *id.* at 142, 111 S.Ct. at 484–85, a substantive provision that is enforceable by ERISA § 502(a). *See* 29 U.S.C. §§ 1140, 1132(a).

The Court in *Ingersoll–Rand* made clear that state statutes that augment ERISA remedies are preempted, as well as state statutes that impair ERISA remedies:

> The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.

*Id.* at 144, 111 S.Ct. at 485 (internal quotation marks and citations omitted). The Supreme Court concluded that this exclusivity of remedy constituted "precisely the kind of special feature that warrants pre-emption" of what might otherwise be viewed as supplemental state remedies unavailable under federal law. *Id.* at 144, 111 S.Ct. at 485 (internal quotation marks and citations omitted). The Court drew no distinction between whether the state-law cause of action impacts on the original ERISA provisions or impacts only on subsequent amendments. In short, the remedies provided by ERISA § 502(a) are exclusive.

We have already said that ERISA §§ 502(a)(3)(B) and 515, 29 U.S.C. §§ 1132(a)(3)(B), 1145, together create a cause of action by which appropriate plaintiffs may enforce an employer's obligations to make contributions to employee benefit plans.[5] We think it is clear under *Ingersoll–*

---

**5.** There is language in *Vachris* that may obscure whether § 630 is an alternative enforcement mechanism to ERISA § 502(*a*), an issue that became significant only later, in light of *Ingersoll–Rand.* The *Vachris* court incorrectly stated that subsection (*g*) of ERISA § 502, 29 U.S.C.

§ 1132(g)(2), gives fiduciaries a cause of action to enforce employer contributions. *See* 66 N.Y.2d at 35, 494 N.Y.S.2d at 860, 484 N.E.2d at 1363. That provision, however, only specifies the measure of relief that a court must give a plaintiff who successfully sues to enforce ERISA

*Rand* that § 630 would interfere with the exclusivity of ERISA § 502(a) and is therefore preempted, notwithstanding *Vachris.*

### D.  *Additional Arguments.*

Two additional arguments by Romney deserve attention.

First, Romney argues that § 630 merely regulates the collection of judgments and thus does not augment civil enforcement measures available under ERISA.  *See Mackey v. Lanier Collection Agency & Serv. Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); *Greenblatt*, 68 F.3d at 574.  However, the wording of § 630 imposes on shareholders a liability that otherwise would not exist.  This reading is confirmed authoritatively by *Vachris:* "[S]ection 630 is remedial in nature; it *provides an additional enforcement mechanism* by which plaintiffs can recover delinquent contributions.... [T]he only effect of section 630 on employee benefit plans is to *give plaintiffs a cause of action to recover payments* the corporation was already obligated to provide."  66 N.Y.2d at 33–34, 494 N.Y.S.2d at 859, 484 N.E.2d at 1362 (emphasis added).[6]  In this way, § 630 alters corporate liability principles by placing liability on other shoulders; it is not a mere mechanism for the collection of money judgments.  That is implicitly recognized by at least one New York court, which has held that a shareholder who is sued under § 630 must still "have his or her day in Court" and be free to litigate the existence of the debt, even though a suit under the statute is predicated on the existence of a judgment against the employer corporation that has been returned unsatisfied.  *Matarazzo v. Segall*, 156 Misc.2d 1, 5, 600 N.Y.S.2d 890, 892 (Sup.1993) (mem.); *see* N.Y.Bus.Corp.Law § 630(a).

Second, Romney claims that ERISA preemption of the New York statute would hamper the operation of another federal scheme, because § 630 is supplementary to an action

under LMRA § 301, 29 U.S.C. § 185(a).  We disagree.  LMRA § 301 involves the interpretation and enforcement of collective bargaining agreements.  True, the employer contributions sought in this case arise from obligations in a collective bargaining agreement.  However, the fact that Romney or the Union finds a state statute helpful in pursuing relief does not mean that the state statute is a necessary part of the federal scheme under LMRA § 301.  After all, if the New York legislature repealed § 630 tomorrow (or had never enacted it in the first place), it could hardly be said that the congressional purposes underlying the LMRA would thereby be frustrated.  Romney's reliance on our decision in *Albradco, Inc. v. Bevona*, 982 F.2d 82 (2d Cir.1992), is misplaced.  *Albradco* held that LMRA § 301 does not preempt § 630, because (1) the New York statute was a remedy for a right (determined by arbitration) that was independent of any collective bargaining agreement, and (2) resolution of the New York claim did not require an interpretation of a collective bargaining agreement.  *Id.* at 87.  But the fact that § 630 does not interfere with the interpretation or enforcement of collective bargaining agreements does not mean that the statute is necessary to carry out the congressional policies underlying LMRA § 301, and says nothing about whether the state statute interferes with the exclusive federal enforcement scheme in ERISA.

### CONCLUSION

In sum, we hold that § 630 "relates to" ERISA (1) because it refers to ERISA plans, or, alternatively, (2) because it constitutes an "alternative enforcement mechanism" to ERISA § 502(a), *see Greenblatt*, 68 F.3d at 574.  Therefore, § 630 is preempted by ERISA.  29 U.S.C. § 1144(a); *Greenblatt*, 68 F.3d at 573.  We also hold that § 630 is "within the scope of the civil enforcement provisions" of ERISA § 502(a).  *Metropoli-*

---

§ 515, 29 U.S.C. § 1145; it thus assumes the existence of a cause of action, without creating it.  The cause of action for enforcing employer contributions is actually provided by ERISA § 502(*a* )(3)(B), *id.* § 1132(a)(3)(B).

**6.**  Although we are not bound by the *Vachris* court's holding on the federal issue of ERISA preemption, we follow of course that court's interpretation of the New York statute.  *See Wisconsin v. Mitchell*, 508 U.S. 476, 483, 113 S.Ct. 2194, 2198, 124 L.Ed.2d 436 (1993).

*tan Life Ins.,* 481 U.S. at 66, 107 S.Ct. at 1547–48. The district court therefore had removal jurisdiction. *Id.,* 481 U.S. at 64, 107 S.Ct. at 1546–47. Since Romney's claim is preempted, however, the district court properly dismissed the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted.

For these reasons, the judgment of the district court is affirmed.