**Bonnie CICIO, Individually and as administratrix of the Estate of Carmine Cicio, Plaintiff,**

v.

**VYTRA HEALTHCARE, Brent Spears, M.D., Individually, and John Does, 1–8, Defendants.**

**No. 00–CV–3047(JS)(ETB).**

United States District Court, E.D. New York.

Sept. 28, 2001.

---

David L. Trueman, Mineola, NY, Joel J. Ziegler, Smithtown, NY, for plaintiff.

Michael H. Bernstein, Sedgwick, Detert, Moran & Arnold, New York City, for defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION

SEYBERT, District Judge.

On June 21, 2000, Defendants moved for an order of dismissal pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. On June 28, 2000, Plaintiff moved to remand this action to the Supreme Court of the State of New York, Suffolk County, pursuant to 28 U.S.C. § 1447(c). By Order dated August 22, 2000, this Court referred the motion to Magistrate Judge E. Thomas Boyle. The magistrate judge completed his report and recommendation on March 13, 2001, recommending to the Court that the Plaintiff's motion to remand be denied and Defendants' motion to dismiss as to all counts be granted. Plaintiff filed her objections to the Report and Recommendation on March 23, 2001 and Defendants filed papers on April 17, 2001 which urge the Court to adopt the Magistrate's report.

The issues raised arise from Plaintiff's claim that defendant Vytra delayed in approving a tandem double stem cell transplant until it was too late to benefit her husband, who died of multiple myeloma, a blood cancer, in May of 1998. After Plaintiff initiated an action in state court, wherein she alleged eighteen state causes of action,[1] the Defendants removed the case to federal court, which gave rise to the instant motions.

In his report and recommendation, the magistrate judge, applying the two-prong test for ERISA removal and preemption set forth in Romney v. Lin, 94 F.3d 74 (2d Cir.1996), found that the Plaintiff's state law claims were preempted by ERISA and were within the exclusive scope of ERISA's civil enforcement provisions. See Report and Recommendation at 295–99. He then found that although asserted as causes of action for breach of contract, negligence and malpractice under state law, the gravamen of the complaint was an attack on benefits decisions—preempted

---

1. The Complaint alleges claims for medical malpractice, practicing medicine without a license, negligence, gross negligence, tortious interference with the physician-patient relationship, breach of fiduciary duty, misrepresentation, negligent misrepresentation, negligent supervision of employees, negligent infliction of emotional distress, intentional infliction of emotional distress, breach of contract, bad faith breach of insurance contract and deceptive acts and business practices.

by ERISA § 514—and, as such, could not be sustained. *Id.* at 299–301. For the reasons discussed below, the report and recommendation is adopted in its entirety, the Plaintiff's motion to remand is denied, Defendants' motion to dismiss is granted, and this case is dismissed with prejudice.

The procedural history of this case is amply set forth in Magistrate Judge Boyle's report, as are the other facts of this case. Thus, pursuant to Fed.R.Civ.P. 72(b), the Court proceeds to a *de novo* review of that "portion of the magistrate judge's disposition to which specific written objection has been made."

In sum, Plaintiff objects to the magistrate judge's determinations that: (1) removal to federal court was proper because her claims relate to an ERISA plan and thus are preempted thereunder; and, (2) dismissal of her claims is warranted. She urges the Court to reject these findings as clearly erroneous. *See* Pltf.'s Aff. in Opp'n ¶ 2; Pltf.'s Memo. of Law at 1, 4–10. Plaintiff advances four arguments: (1) that ERISA does not apply to HMOs and utilization review; (2) that Vytra is not an ERISA plan; (3) that her state law claims arise from improper medical care and should not be construed under ERISA and/or dismissed; and, (4) that her claims against Dr. Spears and John Doe physicians should be remanded because they are not governed by ERISA. These objections are discussed below.

**1. ERISA Applies to All of Plaintiff's Causes of Action**

In his Report and Recommendation, the magistrate judge found that,

> Plaintiff's policy constitutes an employee welfare benefit plan within the meaning of ERISA. It was a plan established by an employer, North Fork Bank, for the purposes of providing medical benefits through the purchase of insurance. *See*

29 U.S.C. § 1002(I)(A) (definition of an "employee benefit plan").

Report and Recommendation at 8.

Plaintiff takes issue with the magistrate judge's conclusion. Plaintiff's first and second objections are based on her contention that VYTRA's health care plan is not an employee benefit plan such that it falls within the exclusive enforcement provisions of ERISA. She asserts that although Congress intended for ERISA enforcement mechanisms to provide the exclusive remedy for employee pension plans, it did not intend to have ERISA govern claims relating to HMOs, utilization review and other health-plan issues. *See* Pltf.'s Memo. at 3–4. Plaintiff argues that the courts' failure to acknowledge the distinction between pensions plans and health care plans has led to "unfair and counter-intuitive decisions" which "strip[ ] plaintiffs of their rights." *Id.*

The Court concurs with the magistrate judge's findings and the well-reasoned authority on which he relies. Vytra's health plan is an ERISA "benefit plan" and, as such, Section 514(a) preempts Plaintiff's common law and statutory claims arising from breach of contract, bad faith breach of insurance contract, misrepresentation and negligent misrepresentation under Counts Nine, Ten, Eleven, Fifteen and Sixteen of the Complaint. *See* Report and Recommendation at 297–99. As recognized by the Supreme Court,

> ERISA's comprehensive regulation of employee welfare and pension benefit plans extends to those that provide "medical, surgical, or hospital care or benefits" for plan participants or their beneficiaries "through the purchase of insurance or otherwise." The Federal statute does not go about protecting plan participants and their beneficiaries by requiring employers to provide a given set of minimum benefits, but instead

controls the administration of benefit plans.

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 115 S.Ct. 1671, 1674, 131 L.Ed.2d 695 (1995).

In construing the scope of the statute, courts have recognized ERISA's reach over claims arising from a variety of medical and other employee benefit plans. *See, e.g., Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (ERISA preemption of tort and contract claims based upon denial of disability benefits); *Zervos v. Verizon New York*, 252 F.3d 163 (2d Cir.2001) (reviewing denial of insured plaintiff's motion for a preliminary injunction arising from an ERISA dispute over denial of experimental medical treatment); *Kolasinski v. Cigna Healthplan of CT., Inc.*, 163 F.3d 148 (2d Cir.1998) (ERISA preemption of state law claims arising from failure to provide insured with compensation for medical treatment); *Nealy v. U.S. Healthcare HMO*, 844 F.Supp. 966 (S.D.N.Y.1994) (ERISA governs claims for breach of contract, medical malpractice, wrongful death and misrepresentation based upon delaying husband's medical treatment); *Raff v. Travelers Ins. Co.*, No. 90–CV–7673, 1996 WL 137310, at *3 (S.D.N.Y. Mar.26, 1996) (recognizing ERISA's extension over claims for breach of contract, conversion and unjust enrichment); *see also Logan v. Empire Blue Cross & Blue Shield*, 275 A.D.2d 187, 194–95, 714 N.Y.S.2d 119 (2d Dep't 2000) (tort and contract claims for denial of experimental Lyme disease treatment preempted by ERISA), *leave to appeal denied*, 96 N.Y.2d 823, 729 N.Y.S.2d 443, 754 N.E.2d 203 (2001).

Plaintiff is mistaken in her contention that "Vytra is not the ERISA" plan and in relying on *Pegram v. Herdrich*, 530 U.S. 211, 120 S.Ct. 2143, 2147, 147 L.Ed.2d 164 (2000). As noted by the magistrate judge,

the "plan" at issue is not Vytra but the agreement between Vytra and Plaintiff's employer which sets forth the rules under which beneficiaries are entitled to benefits. This conclusion is consistent with rather than contrary to *Pegram, supra*, wherein the Court recognized that "[r]ules governing ... definition of benefits, submission of claims, and resolution of disagreements over entitlement over services are the sorts of provisions that constitute a [employee benefit] plan." *Id.* at 223, 120 S.Ct. at 2151. In this case, the Plaintiff's claim arise from a health care policy administered by Vytra which set forth rules and conditions for medical care and which excluded procedures deemed by Vytra's medical director to be experimental. *See* Compl. ¶ 13 & Ex. A. at § 9.3(f).

Accordingly, the Court concurs with the magistrate judge's findings that the subject plan was an employee benefit plan within the meaning of ERISA and that the Plaintiff's claims "relate to" the plan and are thus preempted. The Plaintiff's first and second objections are unsupported and contrary to controlling authority and are, therefore, DENIED.

2. Dismissal is Warranted because all of the claims are Preempted by ERISA Because they Arise from Administration of the Plan

As and for her third and fourth objections, Plaintiff argues that the magistrate misunderstood that, in fact, she alleges claims for improper medical care which are not preempted under ERISA. *See* Pltf.'s Memo. of Law at 6–7. Relying again on *Pegram, supra*, Plaintiff argues that mixed eligibility decisions such as those at issue here are not preempted. *See id.* at 8.

Plaintiff misconstrues *Pegram*, which involved a physician owned-and-operated HMO and a claim for breach of fiduciary duty within the meaning of 29 U.S.C.

§ 1109(a).[2] In *Pegram,* the Supreme Court noted that "pure 'eligibility decisions' turn on the plan's coverage of particular condition or medical procedure for treatment. 'Treatment decisions,' by contrast, are choices about how to go about diagnosing and treating a patient's condition: given a patient's constellations of symptoms, what is the appropriate medical response?" *Id.* at 228, 120 S.Ct. at 2154. On the facts presented, the Court considered whether the inherent conflict of interest implicated when treating physicians derive financial benefit from withholding care automatically gives rise to a breach of fiduciary duty.

This case is distinguishable on its facts. The magistrate judge, while recognizing that a degree of medical judgment was necessarily implicated, correctly determined that the utilization review determination which gave rise to the instant Complaint involves eligibility for coverage such that Defendants' roles, including that of Dr. Spears, were administrative. *See* Report and Recommendation at 300–301 (citing *Pegram* ).

The Plaintiff does not cite any authority for her proposition that Vytra, the plan administrator, engaged in the practice of medicine when it reached its benefits determination. The magistrate judge correctly noted the distinction between true medical malpractice claims arising from negligent treatment (Report and Recommendation at 300–301, citing *Pacificare of Okla., Inc. v. Burrage,* 59 F.3d 151, 153 (10th Cir.1995)) and claims for wrongful denial of coverage for care recommended by a treating physician which are preempted by ERISA (*id.,* citing *Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321 (5th Cir.1992), *cert. denied,* 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992)). In fact, in recommending dismissal of the claims, the magistrate noted two district court cases in this Circuit wherein state-law causes of action were dismissed on ERISA preemption grounds on nearly identical facts. *See id.* at 301–302 (citing *Brandon v. Aetna Servs., Inc.,* 46 F.Supp.2d 110, 113–14 (D.Conn.1999); *Nealy v. U.S. Healthcare HMO,* 844 F.Supp. 966 (S.D.N.Y.1994)).

The Court concurs with the magistrate judge's determination that all of the Plaintiff's state law claims center on Vytra's refusal to approve coverage and thus stem from an adverse benefits determination such that the claims are preempted by ERISA. The Plaintiff's third and fourth objections are, therefore, DENIED.

## CONCLUSION

Having conducted a *de novo* review of Magistrate Judge Boyle's March 13, 2001 Report and Recommendation, Plaintiff's objections thereto, and all other submissions made in connection with Plaintiff's motion to remand and Defendants' motion to dismiss, the Court ADOPTS the Report and Recommendation in its entirety. Plaintiff's Motion to Remand is DENIED and Defendants' motion to dismiss is GRANTED. The Clerk of the Court is directed to close this case.

SO ORDERED.

---

**2.** Section 1109 provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a).

*REPORT AND RECOMMENDATION*

BOYLE, United States Magistrate Judge.

Plaintiff Bonnie Cicio brings suit against Vytra Healthcare ("Vytra"), a health maintenance organization ("HMO"), Vytra's Medical Director, Dr. Brent Spears, M.D., and eight unidentified individuals ("John Does 1–8"). Defendants removed this action to federal court and now seek an order of dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff's claims are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff maintains that her claims are state claims not preempted by ERISA and moves for an order of remand. The above motions were referred to the undersigned by the Honorable Joanna Seybert, United States District Judge, by order dated August 22, 2000 for a report and recommendation.

*FACTS*

Plaintiff was employed by North Fork Bank and received health insurance coverage for herself and her husband, Carmine Cicio, through an insurance policy purchased by North Fork Bank. Vytra administered the policy. (Compl., ¶¶ 9–11.)

According to Plaintiff, Carmine Cicio was diagnosed with multiple myeloma, a type of blood cancer, in March 1997. (*Id.,* ¶ 14.) On January 28, 1998, Dr. Edward Samuel, Mr. Cicio's oncologist, wrote Vytra requesting that Mr. Cicio receive a tandem double stem cell transplant, a treatment which Dr. Samuel described as medically necessary and possibly life-saving. (*Id.,* ¶ 15.) In a letter dated February 23, 1998 from Dr. Spears, Vytra's Medical Director, Vytra denied the re-

quest, stating that a double stem cell transplant was an "experimental/investigational" procedure and thus not covered under Mr. Cicio's policy. (*Id.,* ¶¶ 19, 21.) Mr. Cicio, through Dr. Samuel, appealed Vytra's decision in writing on March 4, 1998, which resulted in Vytra's approval of a single stem cell transplant on March 25, 1998.[1] (*Id.,* ¶¶ 25, 29.) However, according to Plaintiff, the window of opportunity for the effectiveness of the treatment had passed by the time Vytra approved coverage for a single stem cell transplant on March 25, 1998. Mr. Cicio died approximately six weeks later.

On May 3, 2000, Plaintiff commenced this action against Defendants in the Supreme Court of the State of New York, Suffolk County alleging eighteen causes of action arising under New York state law. The theories of liability include: medical malpractice, practicing medicine without a license, negligence, gross negligence, tortious interference with the physician-patient relationship, breach of fiduciary duty, misrepresentation, negligent misrepresentation, negligent supervision of employees, negligent infliction of emotional distress, intentional infliction of emotional distress, breach of contract, bad faith breach of insurance contract, and deceptive acts and business practices under § 349 of the New York General Business Law ("GBL"). On May 30, 2000, Defendants filed a notice of removal on the basis that Plaintiff's claims relate to an "employee welfare benefit plan" as defined by ERISA. *See* 29 U.S.C. § 1002(3) (definition of "employee welfare benefit plan").

On June 21, 2000, Defendants moved for an order of dismissal pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim

---

1. Plaintiff also alleges that Dr. Samuel attempted to appeal Vytra's decision by telephone on the days immediately following his receipt of Vytra's letter denying Mr. Cicio's request. Dr. Samuel left several messages for Dr. Spears, none of which were returned. (Compl., ¶¶ 22–26.)

upon which relief may be granted. On June 28, 2000, Plaintiff moved to remand this action to the Supreme Court of the State of New York, Suffolk County pursuant to 28 U.S.C. § 1447(c).

## DISCUSSION

### I. Removal Jurisdiction

Removal jurisdiction under 28 U.S.C. § 1441 exists when a federal district court has original subject-matter jurisdiction over the plaintiff's claim. *See* 28 U.S.C. § 1441; *Lupo v. Human Affairs Int'l. Inc.*, 28 F.3d 269, 271 (2d Cir.1994). Under 28 U.S.C. § 1447(c), a district court must remand an action to state court "[i]f at any time before final judgment it appears that the district court lacks subject-matter jurisdiction." 28 U.S.C. § 1447(c); *Lupo*, 28 F.3d at 271. A district court's assessment of subject matter jurisdiction for the purposes of determining removal jurisdiction is governed by the well-pleaded complaint rule. *See Lupo*, 28 F.3d at 272 ("[I]n addressing the substantive jurisdictional issue, the initial matter before us is the application of the well-pleaded complaint rule"); *Romney v. Lin*, 94 F.3d 74, 79 (2d Cir.1996) (" '[i]t is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law' ") (*quoting Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987)).

■ The well-pleaded complaint rule limits the search for federal subject matter jurisdiction to " 'what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.' " *See Lupo*, 28 F.3d at 272 (*quoting Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 725, 58 L.Ed. 1218 (1914)). Courts have also recognized an important corollary to the well-pleaded complaint rule, known as the complete preemption doctrine, which provides that, "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co.*, 481 U.S. at 63–63, 107 S.Ct. at 1546.

■ The well-pleaded complaint rule and the complete preemption doctrine have particular relevance to actions removed to federal court by the defendant on the basis of ERISA preemption. In *Romney v. Lin*, 94 F.3d 74 (2d Cir.1996), the Second Circuit held:

[A] state-law cause of action arises under federal law within the meaning of 28 U.S.C. § 1331, and is removable under 28 U.S.C. § 1441, if (1) the cause of action is based on a state law that is preempted by ERISA, and (2) the cause of action is 'within the scope of the civil enforcement provisions of ERISA § 502(a)'. That is because Congress specifically intended to exert 'extraordinary preemptive power' when it adopted the detailed provisions of ERISA § 502(a).

*Romney*, 94 F.3d at 78 (internal citations omitted). "[P]reemption is therefore one requisite of removal jurisdiction, as well as the key to the merits." *Id.* State-law causes of action may not be removed to federal court solely on the theory of ERISA preemption. *See id.* ("Preemption alone is insufficient to support removal jurisdiction.") The second prong of the *Romney* test is that the state-law claim falls within the scope of the civil enforcement provisions of ERISA § 502(a).

■ Because the preemption issue also deals with the merits, we address the latter condition first.

(1) *"Within the Scope of" ERISA § 502(a)*

ERISA § 502(a), in relevant part, provides:

A civil action may be brought—

(1) by a participant or beneficiary

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan

29 U.S.C. § 1132(a)(1)(B). Congress intended for the civil enforcement mechanisms created under § 502(a) to be the exclusive remedy for rights guaranteed by ERISA. ERISA § 502(a) "represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Romney*, 94 F.3d at 80 (*quoting Ingersoll–Rand v. McClendon*, 498 U.S. 133, 144, 111 S.Ct. 478, 485, 112 L.Ed.2d 474 (1990) and *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987)). ERISA defines an "employee welfare benefit plan" as:

any plan, fund or program which was ... established or maintained by an employer ... for the purposes of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment ...

29 U.S.C. § 1002(1)(A). In *Romney,* the Second Circuit reaffirmed its holding in *Smith v. Dunham–Bush, Inc.*, 959 F.2d 6, 10–11 (2d Cir.1992), that common law claims for breach of contract and negligent misrepresentation to enforce an oral promise to pay pension related-benefits fell within the scope of ERISA § 502(a). *See Romney*, 94 F.3d at 80 (ERISA § 502 provides a cause of action to enforce employer contributions to ERISA plans); *Smith,* 959 F.2d at 10–11. Counts Nine and Ten of the Complaint allege that Vy-

tra intentionally or recklessly misconstrued the terms of Mr. Cicio's policy, "knowingly decided not to perform its obligations under the Policy," and "adopted inconsistent and incorrect interpretations of the term 'medical necessity' and other terms contained in the Policy." (Compl., ¶¶ 82, 89, 90.) Also, Count Eleven alleges that Vytra made "negligent misrepresentations about the scope of coverage under the Policy." (*Id.*, ¶ 97.) Finally, Counts Fifteen and Sixteen allege that Vytra breached, in bad faith, the terms of an enforceable insurance contract "by failing to approve and provide care recommended by her treating physician as consistent with provisions of the policy and by delaying approval and provision of care recommended by her treating physician in contradiction to the contract." (*Id.*, ¶¶ 120, 124.)

■ It is apparent from these allegations that Plaintiff is seeking to enforce the terms of the plan and specifically those terms that deal with medical necessity and experimental procedures. However, as it has been recognized time and time again, ERISA ¶ 502(a) provides the exclusive remedy for beneficiaries seeking to enforce the terms of an employee welfare benefit plan as defined by ERISA. *See, e.g., Nealy v. U.S. Healthcare HMO*, 844 F.Supp. 966 (S.D.N.Y.1994) (claims for breach of contract and misrepresentation fall within the scope of § 502(a)); *Raff v. Travelers Ins. Co.*, 1996 WL 137310, at *3 (S.D.N.Y. 1996) (breach of contract, conversion, and unjust enrichment claims fall within the scope of ¶ 502(a)). Accordingly, Plaintiff's claims for breach of contract and misrepresentation contained in Counts Nine, Ten, Eleven, Fifteen and Sixteen of the Complaint fall within the exclusive provisions of ERISA's civil enforcement scheme in ¶ 502(a).

■ Relying on *Pegram v. Herdrich*, 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000), Plaintiff argues that the claims alleged in the Complaint do not fall within the scope of § 502(a) because Vytra, as a HMO, is not a "plan" within the meaning of ERISA. In *Pegram*, the defendant HMO provided financial incentives to the physician owners as a reward for reducing the cost of patient care. The plaintiffs argued that this internal arrangement breached the fiduciary duties owed by the defendants to their subscriber patients. *See Pegram*, 120 S.Ct. at 2147. The Court clarified that:

> when employers contract with an HMO to provide benefits to employees subject to ERISA, the provisions of those documents that set up the HMO are not, as such, an ERISA plan, but the agreement between an HMO and an employer who pays the premiums may, as here, provide elements of a plan by setting out rules under which beneficiaries will be entitled to care.

*Id.*, 120 S.Ct. at 2151. Thus, an agreement between an employer and an HMO, which articulates the rules under which the beneficiaries are entitled to certain benefits, constitutes an employee welfare benefit plan within the meaning of ERISA. *See id.* ("Rules governing collection of premiums, definition of benefits, submission of claims, and resolution of disagreements over entitlement to services are the sorts of provisions that constitute a [employee welfare benefit] plan.") However, the HMO itself, and the documents that set up the HMO do not constitute the plan. *See id.*

According to Plaintiff, her employer, North Fork Bank, purchased a health insurance policy administered by Vytra to provide health care benefits for North Fork employees. (Compl., ¶¶ 9–11.) The policy, entitled "Agreement for Comprehensive Health Services," outlined the rules and conditions under which members and beneficiaries received insurance coverage for medical care. (*See* Compl., Ex. A.) The policy expressly provided coverage for "medically necessary" services, and excludes "[a]ny procedure or service which in the judgment of Vytra's Medical Director, is experimental or is not generally recognized to be effective for a particular condition, diagnosis or body area." (*Id.*, ¶ 13 & Ex. A at § 9.3(f)).

Plaintiff's policy constitutes an employee welfare benefit plan within the meaning of ERISA. It was a plan established by an employer, North Fork Bank, for the purposes of providing medical benefits through the purchase of insurance. *See* 29 U.S.C. § 1002(1)(A) (definition of an 'employee welfare benefit plan'). Contrary to Plaintiff's arguments, the result is no different in light of *Pegram*, which reaffirmed that rules governing the definition of benefits and submission of claims qualify as an employee welfare benefit plan. *See Pegram*, 120 S.Ct. at 2151.

### (2) *ERISA Preemption under § 514(a)*

■ Having determined that several of Plaintiff's state-law claims fall within the ambit of § 502(a), the court now turns to the other requirement under the *Romney* test, which examines whether state-law causes of action "relate to" an ERISA plan, thereby triggering federal preemption. *See Romney*, 94 F.3d at 78. As noted above, a finding that these causes of action fall within the scope of § 502(a) and "relate to" an ERISA plan confirms the appropriateness of removal. *See id.*

ERISA's preemption clause found in § 514(a) is intentionally broad:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereaf-

ter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a); *see New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 651, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995). ERISA stops short of preempting "any law of any State which regulates insurance," although even this exception is limited "by the provision that an employee benefit plan may not 'be deemed to be an insurance company or other insurer ... or to be engaged in the business in insurance.'" *Travelers Ins. Co. ("Travelers"),* 514 U.S. at 651, 115 S.Ct. at 1677 (*quoting* 29 U.S.C. § 1144(b)(2)(A) & (B)). ERISA also does not preempt "any generally applicable criminal law of a State." 29 U.S.C. § 1144(b)(4).

In *Travelers,* the Court acknowledged the difficulty in construing the phrase "relate to" because "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course." *Travelers,* 514 U.S. at 655, 115 S.Ct. at 1677. Despite this difficulty, the Court explained that, " '[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan,' " and that the objectives of the ERISA statute may be used as guide in determining the scope of the state law that survives pre-emption. *Id.,* 514 U.S. at 656, 115 S.Ct. at 1677 (*quoting Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)).

Although the Court's analysis in *Travelers* excluded from the scope of ERISA preemption state claims that have an indirect, tenuous or remote relationship to ERISA, *Travelers* does not disturb the Court's decisions where the Court has held that "state laws providing alternative en-

forcement mechanisms also relate to ERISA plans, triggering pre-emption." *Id.* (*citing Ingersoll–Rand,* 498 U.S. at 142, 111 S.Ct. at 484). In the instant case, Plaintiff is attempting to enforce the health plan in a manner outside the exclusive scope of ERISA's civil enforcement scheme by alleging that Vytra failed to perform its obligations under the policy and intentionally misconstrued the terms of the policy. By circumventing § 502(a), Plaintiff triggers ERISA preemption under § 514(a). *See Kolasinski v. Cigna Healthplan of CT., Inc.,* 163 F.3d 148, 149 (2d Cir.1998) (ERISA § 514(a) preempts common law breach of contract and unfair trade practices claims brought by a plaintiff who was seeking compensation from his insurance provider who had agreed to provide coverage for "medically necessary services"); *Saks v. Franklin Covey, Co.,* 117 F.Supp.2d 318, 330 (S.D.N.Y.2000) ("[I]t has long been held that a plaintiff has no claim for breach of contract against a plan administrator for failing to award benefits, because such claims are squarely preempted by ERISA.")

Based on the foregoing discussion, I find that § 514(a) of ERISA preempts Plaintiff's common law or statutory claims for breach of contract, bad faith breach of insurance contract, misrepresentation and negligent misrepresentation contained in Counts Nine, Ten, Eleven, Fifteen and Sixteen of the Complaint. Therefore, Defendants have shown that a federal question exists in this action, and accordingly, this case has been properly removed. For the purposes of deciding Plaintiff's motion to remand, we do not need to determine whether the remaining counts in the Complaint also satisfy the *Romney* test. Because the court has original jurisdiction over this action, and the remaining counts arise out of the same case or controversy, the court may exercise supplemental jurisdiction over the remaining counts, in the event that they are not pre-empted by

ERISA § 514(a), an issue addressed below in the context of Defendants' Rule 12(b)(6) motion to dismiss. *See* 28 U.S.C. § 1367 (supplemental jurisdiction). Thus, for the reasons stated above, I recommend that Plaintiff's motion to remand be denied.

## II  *Rule 12(b)(6) Motion to Dismiss*

For the purposes of Defendants' Rule 12(b)(6) motion to dismiss, the allegations of the Complaint are deemed to be true and the court "must draw all reasonable inferences in favor of the plaintiff." *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d 59, 63 (2d Cir.1997); *Giglio v. Dunn*, 732 F.2d 1133, 1133 (2d Cir.1984).

### A.  *ERISA Preemption under § 514(a)*

Congress intended for ERISA to regulate all aspects of employee welfare benefit programs. *Saks*, 117 F.Supp.2d at 330. As explained above, ERISA § 514(a) preempts all state laws that "relate to" an employee benefit plan, with a few statutory exceptions. As also discussed previously, Counts Nine, Ten, Eleven, Fifteen and Sixteen of the Complaint purport to create alternative theories of recovery outside the exclusive scope of ERISA's civil enforcement scheme, thereby triggering preemption under § 514(a). Accordingly, these counts should be dismissed.

Defendants argue that Plaintiff's remaining causes of action should also be dismissed on the grounds that they "relate to" an employee benefit plan and are preempted by ERISA. I now turn to a discussion of these remaining counts.

### B.  *State–Law Claims*

(1) Medical Malpractice, Practicing Medicine without a License, Tortious Interference with the Physician–Patient Relationship, Negligence, Gross Negligence, Negligent Supervision of Employees, Breach of Fiduciary Duty, Intentional Infliction of Emo-

tional Distress, Negligent Infliction of Emotional Distress (Counts One, Two, Three, Four, Five, Six, Seven, Eight, Twelve, Thirteen, Fourteen, Eighteen)

█ All of the remaining claims center around Vytra's refusal to approve coverage for the treatment recommended by Mr. Cicio's treating physician and Vytra's alleged failure to render its decision in a timely manner. Briefly summarizing the nature of these claims, Count One alleges a claim for medical malpractice against Vytra. (Compl., ¶¶ 33–37) This claim alleges that Vytra failed to exercise reasonable care and provide treatment consistent with the standards of the medical profession, including the failure to adequately provide medically necessary treatment. (*Id.*) Count Four is a medical practice claim against Dr. Spears and his unnamed colleagues who allegedly failed to provide reasonable care in accordance with the ordinary medical standards. (*Id.*, ¶¶ 54–57.) Count Seven alleges that Defendants' failure to provide approval for a double cell stem transplant interfered with Mr. Cicio's relationship with his treating physician, Dr. Samuel. (*Id.*, ¶¶ 69–76.)

Counts Two and Three allege that Vytra engaged in the unlawful practice of medicine without a license when Vytra allegedly made determinations as to the medical necessity of the requested treatment for Mr. Cicio. In Count Three, Plaintiff asserts that New York Public Health Law § 4410, which declares that "the provision of comprehensive health services directly or indirectly, by a health maintenance organization through its comprehensive health services plan shall not be considered the practice of the profession of medicine by such organization or plan," violates the New York Constitution. (*Id.*, ¶¶ 38–53, *citing* N.Y.Pub. Health L. § 4410).

Counts Five and Six allege that all Defendants acted negligently and were gross-

ly negligent by failing to approve coverage for the requested treatment and by failing to consider the request for treatment in a timely manner. (*Id.*, ¶¶ 58–68.) Count Twelve alleges that Vytra failed to use reasonable care in the supervision of Vytra's employees who made determinations regarding Mr. Cicio's coverage request. (*Id.*, ¶¶ 103–106.)

Count Eight alleges that Defendants breached their fiduciary duty to Mr. Cicio by failing to provide him with medically necessary care as recommend by his doctor and in a timely manner. (*Id.*, ¶¶ 77–81.) Counts Thirteen and Fourteen allege that Vytra negligently and intentionally inflicted emotional distress on the Plaintiff by failing to approve coverage for the treatment requested and by failing to make a determination within a timely manner. (*Id.*, ¶¶ 107–117.) Finally, Count Eighteen alleges that Vytra should be permanently enjoined from placing arbitrary limits on medical necessity determinations based on financial incentives. (Id., ¶¶ 130–136.) All of these counts stem from an adverse benefits determination (i.e. Vytra's refusal to approve coverage for the treatment recommended by Mr. Cicio's treating physician in a timely manner).

Plaintiff argues that Vytra is a medical service provider and the decisions Vytra took were medical and not administrative. In Plaintiff's view, Vytra provided direct medical services in a role identical to that of Dr. Samuel, Mr. Cicio's oncologist. Plaintiff argues that her contentions regarding the medical nature of Vytra's determination are supported by the Court's discussion of "mixed eligibility and treatment decisions" in *Pegram. See Pegram*, 120 S.Ct. at 2153–2155. In *Pegram*, the Court differentiated between "pure eligibility," "treatment," and "mixed eligibility and treatment" decisions. *See id.* Eligibility decisions turn on a plan's coverage of a particular condition while treatment deci-

sions are choices about diagnosing and treating a patient's condition. Often times, these decisions are intertwined with each other, resulting in mixed questions of eligibility and treatment. *See id.*, 120 S.Ct. at 2153. ("The eligibility decision and the treatment decision were inextricably mixed, as they are in countless medical administrative decisions every day.") These distinctions are noteworthy because eligibility decisions are preempted by ERISA while treatment decisions generally are not. *Compare, e.g., Pacificare of Okla., Inc. v. Burrage*, 59 F.3d 151, 153 (10th Cir.1995) (ERISA does not preempt medical malpractice claim challenging quality of care provided by treating physician) *with Corcoran v. United HealthCare, Inc.* 965 F.2d 1321 (5th Cir.1992) (ERISA preempts medical malpractice claim against plan administrator for wrongfully denying coverage for care recommended by treating physician).

*Pegram* is not controlling here, even though the complained of decision—Vytra's determination that a tandem double stem cell transplant was an experimental/investigational procedure—may qualify as a mixed eligibility and treatment decision. *See Pegram*, 120 S.Ct. at 2154–55 (determination concerning "the experimental character of a proposed course of treatment" is a mixed eligibility and treatment decision).

In *Pegram*, the defendant HMO was a direct medical services provider. The treating physician and HMO were one in the same. *See id.*, 120 S.Ct. at 2147. Here, Vytra acted solely in the role of a plan administrator and was not the medical services provider. Vytra's role was limited to determining whether the proposed treatment qualified as an experimental procedure under the terms of the plan. Although Vytra's benefits determination may have involved some medical judgment, this may be said of countless

medical administrative made decisions every day. *See id.,* 120 S.Ct. at 2153. There is no evidence that Congress intended that these quasi-medical/administrative decisions made by a plan administrator survive ERISA preemption. Vytra's coverage determination cannot be separated or construed apart from the ERISA plan. Vytra functioned solely as a plan administrator and bore no responsibility as a provider of medical services in this action. For this reason, the challenge here does not target the quality of care but rather attacks the benefits decision that was made. This determination is preempted by ERISA. *See Saks,* 117 F.Supp.2d 318, 329–330 (ERISA preempts the plaintiff's state law claims against the plan administrator for refusing to compensate the plaintiff for "medically necessary" treatment and for violations of New York's Human Rights Law).

The Court of Appeals for the Second Circuit has not yet addressed the issue of whether state-law claims arising from an adverse mixed eligibility and treatment decision made by a plan administrator is preempted by ERISA. However, a decision from the Fifth Circuit, *Corporate Health Ins. v. Texas Dep't of Ins. ("Corporate Health II"),* 220 F.3d 641 (5th Cir. 2000) is the only Circuit to consider the issue. Corporate Health, an HMO, challenged a Texas law, which, *inter alia,* created an independent review procedure ("IRO") for medical necessity determinations made by an HMO. *See Corporate Health v. Texas Dep't of Ins. ("Corporate Health I"),* 215 F.3d 526, 534–35 (5th Cir. 2000). The court held that ERISA preempted those provisions of the Texas law that provided for an independent review of medical necessity determinations made by an HMO. *See id.* The Texas Department of Insurance filed a motion for panel rehearing and petition for rehearing *en banc,* both of which were denied. *See Corporate Health II,* 220 F.3d at 645. The court stated, "[W]e do not read *Pegram* to

entail that every conceivable state law claim survives preemption so long as it is based on a mixed question of eligibility and treatment." *Id.* at 645. Ultimately, the court decided that the IRO provisions were plainly a state regime for reviewing benefit decisions and not a system for regulating a minimum standard of care.

Plaintiff cites to cases where medical malpractice and related claims survive ERISA preemption, but in those cases the defendant is the treating physician and/or his employer or agent. *See e.g., Lupo,* 28 F.3d at 269; *Moscovitch v. Danbury Hosp.,* 25 F.Supp.2d 74 (D.Conn.1998). Moreover, two district court cases in this circuit have dismissed state-law causes of action against plan administrators on the grounds of ERISA preemption on facts nearly identical to those alleged herein. *See Brandon v. Aetna Servs., Inc.,* 46 F.Supp.2d 110, 113–114 (D.Conn.1999) (the plaintiff alleged a medical malpractice claim against plan administrator for failure to approve coverage for six months of psychiatric treatment where administrator had agreed to provide coverage for medically necessary services and the plaintiff's treating physician recommended such treatment); *Nealy,* 844 F.Supp. 966, 974 (S.D.N.Y.1994) (ERISA preempted state law claims for medical malpractice, wrongful death, loss of consortium, and breach of fiduciary duties where plan administrator and medical director did not provide direct medical services). Accordingly, I recommend that the Defendants' motion to dismiss be granted as to Counts One, Two, Three, Four, Five, Six, Seven, Eight, Twelve, Thirteen, Fourteen, and Eighteen because they "relate to" an ERISA plan, and therefore are preempted by ERISA § 514.

(1) *Deceptive Business Practices Claim*

Plaintiff alleges in Count Seventeen that Defendants "knowingly misrepresented to

Mr. Cicio and other consumers pertinent facts or policy provisions relating to insurance coverage issues" in violation of § 349 of the GBL. Plaintiff cites *Aetna U.S. Healthcare v. Maltz,* 1999 WL 285545 (S.D.N.Y.1999) in support of her position that a § 349 claim for deceptive business practices survives ERISA preemption. The court disagrees. In *Maltz,* the court found that the plaintiff's allegations concerned misrepresentations about the *quality* of care plan beneficiaries would receive, the alleged misrepresentations were made in independent promotional advertisements, and the claims could be resolved without interpreting the terms of the policy. *See Maltz,* 1999 WL 285545 at *4. In the instant case, Plaintiff makes no such allegations, and is exceedingly vague concerning the alleged misrepresentations. There is no indication that they concern the quality of the care promised. To the contrary, Plaintiff claims that the misrepresentations are "relating to insurance coverage." (Compl., ¶ 128.) In light of these facts, Plaintiff's deceptive business practices claim "relate[s] to" an ERISA plan, namely Mr. Cicio's health plan, within the meaning of § 514(a) and should be preempted. In addition, even assuming arguendo that ERISA preemption did not apply, Plaintiff has not stated a § 349 claim under state law. *See Maltz v. Aetna U.S. Healthcare, Inc.,* 270 A.D.2d 68, 704 N.Y.S.2d 562 (2000) (HMO plan enrollees challenging HMO's promotional advertisements as a deceptive business practice following an adverse coverage determination did not state a claim under § 349). Therefore, I recommend that Defendants' motion to dismiss be granted as to this claim, also.

### RECOMMENDATION

For the foregoing reasons, I recommend that Plaintiff's motion to remand be denied and Defendants' motion to dismiss as to all counts be granted.

### OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within ten (10) days of the date of entry of this report. Failure to file objections within ten (10) days will preclude further appellate review of the District Court's order. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), and 72(b); *IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Frank v. Johnson,* 968 F.2d 298 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health and Human Serv.,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam).

SO ORDERED.

Dated: March 13, 2001.